1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11

12  TRANSPORT TECHNOLOGIES,      )   CV 15-6423-RSWL-MRWx
    LLC,                         )
13                               )
                                 )   **ORDER** re:
14            Plaintiff,         )
                                 )   Defendant's Motion for
15                               )   Judgment on the
        v.                       )   Pleadings [50];
16                               )
                                 )   Defendant's Motion to
17  LOS ANGELES COUNTY           )   Stay [52]; and
    METROPOLITAN TRANSPORTATION  )
18  AUTHORITY,                   )   Defendant's Motion for
                                 )   Leave to File Amended
19            Defendant.         )   Answer [61]
                                 )
20                               )
                                 )
21  _____)

22        Currently before the Court are three Motions by

23  Defendant Los Angeles County Metropolitan

24  Transportation Authority's ("Defendant"): (1) Motion

25  for Judgment on the Pleadings under Federal Rule of

26  Civil Procedure 12(c) [50] ("Motion for Judgment on the

27  Pleadings"); (2) Motion to Stay [52] the case pending

28  the outcome of an *inter partes* review ("IPR")

proceeding that Defendant filed with the United States Patent and Trademark Office ("PTO"), challenging all asserted claims of the patent-in-suit ("Motion to Stay"); and (3) Motion for Leave to File Amended Answer [61] ("Motion to File Amended Answer").

Having reviewed all papers submitted pertaining to these Motions, the Court **NOW FINDS AND RULES AS FOLLOWS:**

(1) The Court **DENIES** the Motion for Judgment on the Pleadings [50] **WITHOUT PREJUDICE**;

(2) The Court **GRANTS** the Motion to Stay [52], and **STAYS** the proceedings pending the Patent Trial and Appeal Board's ("PTAB") determination in IPR; and

(3) The Court **VACATES WITHOUT PREJUDICE** the Motion to File Amended Answer [61]. Defendant may renew its Motion to File Amended Answer if necessary.

## I. BACKGROUND

### A. Factual Background

Plaintiff Transport Technologies, LLC ("Plaintiff") is a California limited liability company which owns the '101 Patent, entitled "Motor Vehicle Occupancy Signaling System." Compl. ¶¶ 5-6, ECF No. 1. The '101 Patent's abstract describes the invention as follows:

A system that allows a claim by a registrant as to the number of occupants traveling in a vehicle over a section of highway with a high

1    occupancy vehicle incentive program in place to

2    be transmitted.  The registrant is identified

3    by a registrant identifier.  The claim about

4    occupancy is optionally visually displayed as

5    the vehicle traverses the highway.  The

6    identification of the registrant making the

7    claim is captured by a plurality of reading

8    devices along the highway and transferred to a

9    central processing system.  That system

10    determines if a qualified ride-sharing event

11    has occurred, and if so it will then provide

12    for distribution of the program incentives to

13    the registered individual(s).

14  Id. at Abstract.

15    Defendant is the public transportation agency for

16  the County of Los Angeles.  Id. at ¶ 2.  Defendant

17  operates high occupancy/toll lanes on the I-110 and I-

18  10 freeways known as "ExpressLanes."  Id. at ¶ 7.

19  Drivers wishing to use the ExpressLanes are required to

20  carry a "FasTrak" transponder in their cars.  Id.  The

21  FasTrak transponder includes a switch that may be set

22  to indicate that a car contains 1, 2, or 3 or more

23  passengers.  Id.  At various points on the

24  ExpressLanes, Defendant controls and operates a series

25  of wireless readers and communications infrastructure

26  that communicates with FasTrak transponders to receive

27  claims about car occupancy, and transfers that

28  information to Defendant's data processing facilities.

3

Id. at ¶ 8.  Defendant uses the information it receives to charge drivers for their use of the ExpressLanes. Id.

Plaintiff alleges that Defendant's operation of the ExpressLanes infringes claims 1, 3, 5, 6, 8, and 10 of the '101 Patent.  Id. at ¶ 11.

In the Motion for Judgment on the Pleadings, Defendant argues that the claims at issue are directed to patent-ineligible subject matter under 35 U.S.C. § 101.

Method claim 6 of the '101 Patent recites:

> A method of receiving claimed vehicle occupancy data about a vehicle by a registrant, and also identifying the registrant as the vehicle traverses a designated section of highway, said method comprising the steps of:
>
> > transmitting the number of occupants in a vehicle claimed by a registrant; transmitting a signal from the vehicle that identifies the registrant; and then receiving the claim by a registrant as to number of occupants in a vehicle and reading the signal from the vehicle that identifies the registrant as the vehicle transits the designated section of highway.

Method claim 8 of the '101 Patent recites:

The method of claim 6 further comprising the transmission of number of occupants claimed by a registrant by a transponder that transmits a signal both identifying the registrant and the number of occupants claimed by that registrant.

Method claim 10 of the '101 Patent recites:

The method of claim 8 further comprising a visual display of the claimed number of occupants, which display can be seen by an enforcement officer outside the vehicle as it traverses the highway.

Defendant characterizes the method claims 6, 8, and 10 as representative of the system claims 1, 3, and 5 because the claims "contain only minor differences in terminology but require performance of the same basic process." Mot. J. Pleadings 19:18-21, ECF No. 50 (citation and internal quotation marks omitted).

System claim 1 of the '101 Patent recites:

A vehicle occupancy monitoring system wherein a claim is made by a registrant about the number of occupants in a vehicle as it traverses a designated section of highway:

a transmitter that transmits a claim as to the number of occupants in the vehicle;

a sending transponder in the vehicle
that transmits a code that uniquely
identifies the registrant with the
program administrator;

a reading data collector that can
interrogate a vehicle within its
range, and receive, store and transfer
to a central processing facility said
transmitted code identifying the
registrant along with a time/date
stamp.

System claim 3 of the '101 Patent recites:

The vehicle occupancy monitoring system of
claim 1 wherein said sending transponder
also transmits the claimed number of
vehicle occupants.

System claim 5 of the '101 Patent recites:

The vehicle occupancy monitoring system of
claim 3 further comprising:

a visual display of the number of
claimed occupants that can be seen by
an enforcement officer outside the
vehicle as it traverses the highway.

## B.   Procedural Background

On August 21, 2015, Plaintiff filed its Complaint
[1] for patent infringement against Defendant.
Defendant filed an Answer [12] to the Complaint on
October 22, 2015.

1    On January 20, 2016, the case was referred to the
2    ADR Program for mediation [35], but the parties were
3    unable to reach an agreement through mediation [51].
4        On May 20, 2016, Defendant filed a petition for IPR
5    with the PTO asserting invalidity grounds under 35
6    U.S.C. §§ 102 and 103 against the patent-in-suit.  See
7    Decl. of Phillip J. Lee ("Lee Decl."), Ex. A, Def.'s
8    IPR Petition as to '101 Patent, ECF No. 50-3.  That
9    same day, Defendant filed its Motion for Judgment on
10   the Pleadings [50].
11       On May 24, 2016, Defendant filed its Motion to Stay
12   [52] the case pending the outcome of IPR before the PTO
13   and/or pending this Court's resolution of Defendant's
14   Motion for Judgment on the Pleadings.
15       On June 7, 2016, Plaintiff opposed both Motions
16   [56, 57].  On June 14, 2016, Defendant timely filed its
17   Replies [58, 59].  The motions were taken under
18   submission on June 24, 2016 [60].
19       On July 12, 2016, Defendant filed the Motion to
20   File Amended Answer [61].  Plaintiff filed a Non-
21   Opposition [64] to the Motion to File Amended Answer
22   July 20, 2016.

## II. DISCUSSION

**A.  <u>Legal Standards</u>**

   1.  <u>Motion for Judgment on the Pleadings</u>

   Federal Rule of Civil Procedure 12(c) states that
"[a]fter the pleadings are closed—but early enough not
to delay trial—a party may move for judgment on the

7

pleadings." Fed. R. Civ. P. 12(c). Judgment on the
pleadings is appropriate when, taking all the
allegations in the non-moving party's pleadings as
true, the moving party is entitled to judgment as a
matter of law. Ventress v. Japan Airlines, 486 F.3d
1111, 1114 (9th Cir. 2007); Honey v. Distelrath, 195
F.3d 531, 532 (9th Cir. 1999). When ruling on a motion
for judgment on the pleadings, a court may consider the
pleadings, documents attached to the pleadings,
documents incorporated by reference in the pleadings,
and matters of judicial notice. United States v.
Ritchie, 342 F.3d 903, 907-08 (9th Cir. 2003). The
allegations of the nonmoving party must be accepted as
true, while any allegations made by the moving party
that have been denied or contradicted are assumed to be
false. See MacDonald v. Grace Church Seattle, 457 F.3d
1079, 1081 (9th Cir. 2006); Hal Roach Studios v.
Richard Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th
Cir. 1989). The facts are viewed in the light most
favorable to the non-moving party and all reasonable
inferences are drawn in favor of that party. See
Living Designs, Inc. v. E.I. DuPont de Nemours & Co.,
431 F.3d 353, 360 (9th Cir. 2005); Turner v. Cook, 362
F.3d 1219, 1225 (9th Cir. 2004). "[J]udgment on the
pleadings is improper when the district court goes
beyond the pleadings to resolve an issue; such a
proceeding must properly be treated as a motion for
summary judgment." Hal Roach Studios, 896 F.2d at

1550.

2.   Stay Pending *Inter Partes* Review

"Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO [IPR]." Ethicon, Inc. v. Quigg, 849 F. 2d 1422, 1426-27 (Fed. Cir. 1988) (citations omitted).  Although the district court is not required to stay judicial proceedings pending IPR, "there is a liberal policy in favor of granting motions to stay proceedings pending the outcome of [IPR], especially in cases that are still in the initial stages of litigation and where there has been little or no discovery."  Aten Int'l Co. v. Emine Tech. Co., No. SACV 09-0843 AG (MLGx), 2010 WL 1462110, at *6 (C.D. Cal. Apr. 12, 2010) (quoting Nanometrics, Inc. v Nova Measuring Instruments, Ltd., No. C 06-2252 SBA, 2007 WL 627920, at *1 (N.D. Cal. Feb. 26, 2007)); but see Aylus Networks, Inc. v. Apple, Inc., No. C-13-4700 EMC, 2014 WL 5809053, at *1 (N.D. Cal. Nov. 6, 2014) ("[A] Court is under no obligation to delay its own proceedings where parallel litigation is pending before PTAB" and "courts . . . have denied stay requests when the PTAB has not yet acted on the petition for review" (citations omitted)).

Three factors are significant in analyzing whether to stay proceedings pending IPR: "(1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and

trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party." Universal Elecs., 943 F. Supp. 2d at 1030-31 (quoting Aten, 2010 WL 1462110, at *6). The district court's inquiry is not limited to these factors.  Rather, "the totality of the circumstances governs." Id. (quoting Allergan Inc. v. Cayman Chem. Co., No. SACV 07-01316 JVS (RNBx), 2009 WL 8591844, at *2 (C.D. Cal. Apr. 9, 2009)).

    The party moving for a stay bears the burden to persuade the court that a stay is appropriate. Netlist, Inc. v. Smart Storage Sys., Inc., No. 13-cv-5889-YGR, 2014 WL 4145412, at *1 (N.D. Cal. Aug. 21, 2014).

**B.  Patent Eligibility Under 35 U.S.C. § 101**

    1.  Patent Eligibility Under *Mayo* and *Alice*

    Section 101 of the Patent Act provides that a patent may be obtained for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof."  35 U.S.C. § 101. The Supreme Court has "long held that this provision contains an important implicit exception: laws of nature, natural phenomena, and abstract ideas are not patentable." Alice Corp. Pty. v. CLS Bank, Int'l, 134 S. Ct. 2347, 2354 (2014).  "The concern that drives this exclusionary principle" is "one of preemption." Id.  In other words, the concern is "'that patent law not inhibit further discovery by improperly tying up

1  the future use of' these building blocks of human

2  ingenuity." _Id._ (quoting _Mayo Collaborative Servs. v._

3  _Prometheus Labs, Inc._, 132 S. Ct. 1289, 1301 (2012)).

4  _Alice_ warns courts, however, to "tread carefully in

5  construing this exclusionary principle lest it swallow

6  all of patent law," because "[a]t some level, 'all

7  inventions . . . embody, use, reflect, rest upon, or

8  apply laws of nature, natural phenomena, or abstract

9  ideas.'" _Id._ (quoting _Mayo_, 132 S. Ct. at 1293).

10       Under the two-step framework established in _Alice_

11  and _Mayo_, the court first asks "whether the claims at

12  issue are directed to one of those patent-ineligible

13  concepts," as opposed to "patent eligible applications

14  of those concepts." _Id._ at 2354-55.  If so, the court

15  then "consider[s] the elements of each claim both

16  individually and 'as an ordered combination' to

17  determine whether the additional elements 'transform

18  the nature of the claim' into a patent-eligible

19  application." _Id._ at 2355 (quoting _Mayo_, 132 S. Ct. at

20  1298, 1297.  In this second step, the court looks for

21  an "inventive concept," or "an element or combination

22  of elements that is 'sufficient to ensure that the

23  patent in practice amounts to significantly more than a

24  patent upon the [ineligible concept] itself.'" _Id._

25  (quoting _Mayo_, 132 S. Ct. at 1294).

26       This standard is easier to articulate than it is to

27  apply.  _Modern Telecom Sys. LLC v. Earthlink, Inc._, No.

28  SA CV 14-0347-DOC, 2015 WL 1239992, at *6 (C.D. Cal.

11

1  Mar. 17, 2015).  "The line between a patentable
2  'process' and an unpatentable 'principle' is not always
3  clear," <u>Parker v. Flook</u>, 437 U.S. 584, 589 (1978), and
4  the Federal Circuit has referred to § 101 jurisprudence
5  as a "murky morass."  <u>MySpace, Inc. v. GraphOn Corp.</u>,
6  672 F.3d 1250, 1259 (Fed. Cir. 2012) (suggesting, in
7  dicta, that "courts could avoid the swamp of verbiage
8  that is § 101" by addressing patentability defenses
9  under §§ 102, 103, and 112 before addressing patent
10  eligibility under § 101).

11       2.  <u>Ripeness of Deciding Patent Eligibility</u>
12       Patent eligibility under § 101 is a question of law
13  that may, in appropriate cases, be decided on the
14  pleadings without the benefit of a claim construction
15  hearing.  <u>See</u> <u>Content Extraction & Transmission LLC v.</u>
16  <u>Wells Fargo Bank, N.A.</u>, 776 F.3d 1343, 1349 (Fed. Cir.
17  2014) (affirming district court's grant of a motion to
18  dismiss based on § 101 without having a claim
19  construction hearing); <u>Ultramercial, Inc. v. Hulu, LLC</u>,
20  772 F.3d 709, 711 (Fed. Cir. 2014) (same; <u>Bancorp</u>
21  <u>Servs., LLC v. Sun Life Assur. Co. of Canada (U.S.)</u>,
22  687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[C]laim
23  construction is not an inviolable prerequisite to a
24  validity determination under § 101.").  However, "it
25  will ordinarily be desirable - and often necessary - to
26  resolve claim construction disputes prior to a § 101
27  analysis, for the determination of patent eligibility
28  requires a full understanding of the basic character of

1  the claimed subject matter." <u>Bancorp Servs.</u>, 687 F.3d
2  at 1273-74.

3      3.  <u>Defendant's Burden to Show Patent Ineligibility</u>

4      The parties dispute Defendant's burden in
5  connection with the Motion for Judgment on the
6  Pleadings.  Plaintiff argues that its '101 Patent is
7  presumed valid and Defendant bears the burden of
8  proving by clear and convincing evidence that the '101
9  Patent claims patent-ineligible subject matter.  Opp'n
10 to Mot. J. Pleadings 6:1-3, ECF No. 57.

11     Defendant argues that the clear and convincing
12 evidence standard does not apply to patent-eligibility
13 challenges under § 101 because patent-eligibility is a
14 question of law that does not require proof by clear
15 and convincing evidence.  Mot. J. Pleadings 7:3-11.

16     The Court agrees with Defendant that the clear and
17 convincing standard is not necessarily applicable in
18 the context of determining patent-eligibility under §
19 101, which is a question of law.  <u>Modern Telecom</u>, 2015
20 WL 1239992, at *7 (citing <u>CyberSource Corp. v. Retail</u>
21 <u>Decisions, Inc.</u>, 654 F.3d 1366, 1369 (Fed. Cir. 2011)).

22     Particularly after <u>Alice</u>, courts have frequently
23 decided patent eligibility on the pleadings.  <u>Id.</u>
24 Because, ordinarily, no evidence outside the pleadings
25 is considered in resolving a motion for judgment on the
26 pleadings, it makes little sense to apply a "clear and
27 convincing evidence" standard - a burden of proof - to
28 such motions.  <u>Id.</u>

1   Even though Defendant need not establish patent-
2   ineligibility under the heightened clear and convincing
3   evidence standard, Defendant still bears the burden of
4   proof.  Moreover, in applying § 101 jurisprudence at
5   the pleading stage, the Court construes the claims of
6   the '101 Patent in a manner most favorable to
7   Plaintiff.  See Content Extraction, 776 F.3d at 1348-
8   49.

9   **C.  Discussion**

10       1.  Motion for Judgment on the Pleadings

11           a.  *Step One of the Alice/Mayo Inquiry*

12   Under the first step of the Alice/Mayo inquiry, the
13   Court must determine whether the patent claims at issue
14   are directed to an abstract idea.

15   When considering whether a claim is directed to an
16   abstract idea, courts "compare the claims at issue to
17   those already found to be directed to an abstract idea
18   in previous cases."  Enfish, LLC v. Microsoft Corp.,
19   No. 2015-1244, 2016 WL 2756255, at *4 (Fed. Cir. May
20   12, 2016).  For example, the claims in Alice were
21   directed to the abstract idea of "intermediated
22   settlement," "i.e., the use of a third party to
23   mitigate settlement risk," and "simply instruct[ed] the
24   practitioner to implement the abstract idea . . . on a
25   generic computer."  Alice, 134 S. Ct. at 2356, 2359.
26   In Ultramercial, Inc. v. Hulu, LLC, 772 F.3d 709, 715
27   (Fed. Cir. 2014), the claims were directed to the
28   abstract idea of "using advertisement as an exchange or

14

currency."  In <u>buySAFE, Inc. v. Google, Inc.</u>, 765 F.3d 1350, 1355 (Fed. Cir. 2014), the claims simply invoked a generic computer to implement the abstract concept of "creating a contractual relationship - a 'transaction performance guaranty' - that is beyond question of ancient lineage."  In <u>Content Extraction and Transmission LLC v. Wells Fargo Bank, N.A.</u>, 776 F.3d 1343, 1347 (Fed. Cir. 2014), the claims were "drawn to the abstract idea of 1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in memory."  Lastly, in <u>Concaten, Inc. v. AmeriTrak Fleet Solutions, LLC</u>, 131 F. Supp. 3d 1166, 1172 (D. Colo. 2015), the patent-in-suit was directed to the abstract idea of collecting information from a vehicle and transmitting that information over a network.

Here, the representative system claims of the '101 Patent describe a system that communicates vehicle occupancy information to a central processing facility. The method claims recite a method for communicating occupancy information, the identity of the registrant transmitting the occupancy information, and information about when the information was transmitted to a central processing facility.  These claims are conceptual in nature.  Much like the claims at issue in <u>Concaten</u>, the claims of the '101 Patent are drawn to the basic concept of collecting and transmitting vehicle occupancy information.  This concept, like the process

15

of collecting, recognizing, and storing data in <u>Content Extraction</u>, is an abstract idea.  <u>See</u> 776 F.3d at 1347.

      b.   *Step Two of the <u>Alice</u>/<u>Mayo</u> Inquiry*

Having determined that the patent-in-suit is directed at an abstract idea, the Court must determine whether the patent includes "additional features to ensure that the claim[s] [are] more than a drafting effort designed to monopolize the abstract idea." <u>Alice</u>, 134 S. Ct. at 2357 (citation omitted).

Defendant argues that the claims of the '101 Patent do not add any material to the abstract idea of communicating vehicle information, as the claims simply recite generic components, such as a "transmitter," "sending responder," and "reading data collector." Defendant argues that the '101 Patent claims are directed to conventional equipment that is described in purely functional and generic terms.

Under the current procedural posture of the case, however, the Court must construe the patent claims in a manner most favorable to Plaintiff.  <u>See</u> <u>Content Extraction</u>, 776 F.3d at 1349.  Considering only the allegations contained in the pleadings and documents attached to the pleadings for purposes of this Motion, there is no record of the technology described in the '101 Patent being well-known at the time of filing or simply involving performance of "well-understood, routine, and conventional activities commonly used in the industry."  <u>See</u> <u>id.</u> at 1348.  The '101 Patent

provides that "no [current] system . . . provides the means for someone to claim a vehicle occupancy level that can be captured for processing as well as being available for enforcement purposes." '101 Patent at col. 1 ll. 44-47.  Thus, on the face of the '101 Patent, the claims are directed to a new means for traffic monitoring and for the automatic identification of a vehicle as it passes through a toll gate, which is an improvement on existing systems.

"Distinguishing between claims that recite a patent-eligible invention and claims that add too little to a patent-ineligible abstract concept can be difficult, as the line separating the two is not always clear." DDR Holdings, 773 F.3d at 1255.  Ultimately, Defendant bears the burden of making clear that Plaintiff's '101 Patent lacks an "inventive concept." At this stage, Defendant has failed to meet that burden.

Moreover, the claim construction process will aid the Court in determining how the terms describing the claimed equipment and electronic signaling will be construed.  Bancorp Servs., 687 F.3d at 1273-74 ("[I]t will ordinarily be desirable - and often necessary - to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter."); Morsa v. Facebook, Inc., 77 F. Supp. 3d 1007, 1012 (C.D. Cal. 2014) ("[C]laim

construction is a prerequisite to the § 101 inquiry 'only where claim construction disputes are relevant.'" (citation omitted)).   Accordingly, the Court cannot resolve the § 101 analysis before gaining a full understanding of the claimed subject matter during claim construction.

      c.   *Conclusion*

    For these reasons, Defendant's Motion for Judgment on the Pleadings is **DENIED WITHOUT PREJUDICE.** Defendant is free, however, to challenge the patent eligibility of Plaintiff's '101 Patent at a later stage upon a more complete evidentiary record.

    2.   <u>Motion to Stay Pending IPR</u>

      a.   *Stage of the Litigation*

    In ruling on the Motion to Stay, the Court first looks to the question of whether the litigation has progressed significantly such that a stay would be disfavored.   The status of discovery, claim construction, trial setting, and the overall stage of the case are all considerations bearing on this factor. <u>Convergence Techs. (USA), LLC v. Microloops Corp.</u>, No. 5:10-CV-02051 EJD, 2012 WL 1232187 (N.D. Cal. Apr. 12, 2012).

    Here, Defendant filed for IPR on May 20, 2016. Given the timing of the petition, a decision from the PTO as to whether it will proceed with IPR is not likely to be issued until late 2016.   <u>See</u> 35 U.S.C. §§ 313, 314(a); 37 C.F.R. § 42.107(b).   If the PTO

proceeds with IPR, a final determination will likely issue by the end of 2017.  <u>See</u> 35 U.S.C. § 316(a)(11); *Changes to Implement Inter Partes Review Proceedings, Post-Grant Review Proceedings, and Transitional Program for Covered Business Method Patent*, 77 Fed. Reg. at 48,695 (Aug. 14, 2012) (codified at 37 C.F.R. §§ 42.100 *et seq.*).

In the meantime, although the parties have engaged in some discovery, the claim construction process is in its infancy, and the parties have not yet exchanged claim construction briefs.  <u>See</u> ECF No. 63 (setting deadline for opening claim construction brief on August 19, 2016).  Moreover, the Markman hearing is set for September 19, 2016, and discovery will not be complete until October 21, 2016.  Accordingly, a stay at this time could potentially conserve the resources of the parties and the Court.  On balance, this factor weighs *in favor* of granting a stay.

b.  *Potential Simplification of the Issues*

A stay is favored where "the outcome of the reexamination would be likely to assist the court in determining patent validity and, if the claims were canceled in the reexamination, would eliminate the need to try the infringement issue."  <u>Evolutionary Intelligence, LLC v. Apple, Inc.</u>, No. C 13-04201 WHA, 2014 WL 93954, at *2 (N.D. Cal. Jan. 9, 2014) (citing <u>Slip Track Sys., Inc. v. Metal Lite, Inc.</u>, 159 F.3d 1337, 1341 (Fed. Cir. 1998)).  "A stay may also be

granted in order to avoid inconsistent results, obtain
guidance from the PTAB, or avoid needless waste of
judicial resources." Id.  A complete stay of
litigation, however, may be unwarranted where the PTO
has yet to decide whether to move forward with IPR.
Id.

Although Defendant argues that IPR could simplify
the issues in this case by eliminating the need for
trial, reducing claim construction disputes, or
minimizing the number of claims the parties need to
address, the Court cannot determine whether the issues
in the case are likely to be simplified until the PTO
determines whether to proceed with IPR.  Should the PTO
grant the petition, the issues are likely to be
simplified.  However, denial of the petition would have
little to no effect on the litigation.  Accordingly,
this factor is *neutral* at this time.

> c.  *Undue Prejudice or Clear Tactical*
> *Disadvantage*

The Court next looks to whether Plaintiff would be
prejudiced or put at a tactical disadvantage by a stay.
Delay alone is not sufficient to establish prejudice.
See Convergence Techs., 2012 WL 1232187, at *2.

Here, Plaintiff's broad and unsupported allegations
of "gamesmanship" and "delay" are not sufficient to
demonstrate prejudice as a result of a stay.
Plaintiff's arguments regarding the age of the inventor
of the '101 Patent are also irrelevant.

20

1       Although Defendant filed its IPR petition nine
2  months after Plaintiff's Complaint was filed,
3  Defendant's IPR petition was filed within the statutory
4  time limit.  35 U.S.C. § 315(b).  Moreover, Defendant
5  justifies its delay by arguing that "it was . . .
6  perfectly reasonable and consistent with [Defendant's]
7  public stewardship obligations for MTA to take a
8  reasonable amount of time to assess the case as it
9  moved forward," and "until April 8, 2016, MTA was
10 litigating this case on two fronts – [Plaintiff] and
11 third party defendant, Atkinson Contractors, LP."
12 Reply re Mot. Stay 2:2-11.  Defendant also notes that
13 it did not receive notice of which claims were being
14 asserted until April 1, 2016, when Plaintiff served its
15 Amended Initial Identification of Asserted Claims.  Id.
16 at 4:1-3.  Defendant then filed its IPR petition as
17 soon as practicable on May 20, 2016.
18      In addition, Plaintiff does not dispute that it is
19 a non-practicing entity which is not a direct
20 competitor of Defendant, a public agency.  See
21 Tierravision, Inc. v. Google, Inc., No. 11cv2170 DMS
22 (BGS), 2012 WL 559993, at *3 (S.D. Cal. Feb. 21, 2012)
23 ("Especially where Plaintiff does not practice the
24 patented invention, and is not a competitor of
25 Defendant, the mere fact and the length of any delay in
26 this case does not demonstrate prejudice sufficient to
27 deny Defendant's request for a stay.").
28      For these reasons, Defendant has shown that the

imposition of a stay would not cause undue prejudice or tactical disadvantage to Plaintiff.   This factor weighs *in favor* of a stay.

           d.   *Conclusion*

Based on the three-factor test, two factors weigh in favor of a stay and one factor is neutral.   Given the balancing of the various considerations associated with whether to stay the case pending IPR, the Court **GRANTS** a stay.

## III. CONCLUSION

For these reasons, the Court **DENIES** the Motion for Judgment on the Pleadings **WITHOUT PREJUDICE**.   The Court **GRANTS** the Motion to Stay the proceedings pending the PTAB's decision whether to institute IPR.   If the IPR petition is granted, the stay will remain in effect until the PTAB makes its final determination in IPR.

**IT IS HEREBY ORDERED** that the parties shall file a joint status report every six months from the date of this order or within 14 days of the PTAB's decision on whether to grant IPR.   If IPR is granted, **IT IS FURTHER ORDERED** that the parties shall file a joint status report within 14 days of the PTAB's final determination.

Defendant's Motion to File Amended Answer [61] is **HEREBY VACATED WITHOUT PREJUDICE**, and may be renewed, if necessary.

/ / /

/ / /

1    The Markman hearing currently set for September 19,

2  2016 [63] is **VACATED.**

3    **IT IS SO ORDERED.**

4

5  DATED: July 22, 2016                    s/ RONALD S.W. LEW

6                                          **HONORABLE RONALD S.W. LEW**
                                           Senior U.S. District Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28